# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-00054-01-CR-W-GAF |
| | ) | |
| MICHAEL S. ROJAS, | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM: MOTION AND SUGGESTIONS IN MITIGATION OF SENTENCE

COMES NOW the defendant, Michael S. Rojas, by and through counsel, William J. Raymond, in accordance with Rule 32, Fed. R. Crim. P., and hereby requests the Court to consider a sentence of 48 months. In support, Mr. Rojas offers the following:

## BRIEF HISTORY

On February 15, 2015, Mr. Rojas was arrested for firearms offenses. On January 13, 2020, Mr. Rojas entered a plea to an information charging him with being a felon in possession of a firearm. The statutory range of punishment for the Court to consider for felon in possession of a firearm is not more than ten years imprisonment and not more than three years of supervised release. The advisory guideline range as recommended by the U.S. Probation Office is 120 months of imprisonment. Mr. Rojas has objections pending that

suggest the guideline range should be 51 to 63 months.

## SUGGESTIONS SUPPORTING NON-GUIDELINE SENTENCE

The advisory sentencing guidelines are a factor for the Court to consider but a district court may not begin with the presumption that those guidelines are reasonable. <u>United States v. Alvizo-Trujillo</u>, 521 F.3d 1015, 1018-1019 (8th Cir.2008) (<u>citing</u> <u>United States v. Gall</u>, 128 S.Ct. 586, 596-597 (2007) and <u>United States v. Rita</u>, 127 S.Ct. 2456 (2007)). In this case, a number of mitigating factors would warrant a sentence below the sentencing guideline range.

In imposing any sentence 18 U.S.C. § 3553 generally directs that the Court shall impose a sentence sufficient, but not greater than necessary. Among the factors for the Court to consider are the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford an adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. (See 18 U.S.C. § 3553(a)). An analysis of these factors demonstrates that a sentence of 48 months is appropriate in this case.

### The nature and circumstances of the offense and the history and characteristics of the defendant

Michael Rojas grew up in a broken home. His parents were not together

2

at the time of his birth. Mr. Rojas' father was an alcoholic. His father was not in his life when he was a child.

During his entire life Mr. Rojas' mother suffered from drug addiction. His mother would use drugs daily. The drug addiction led to an uncertain existence for young Michael. At times he was homeless, at times the family lived without electric, utilities and food. Eventually Mr. Rojas' mother died from a drug overdose.

When Mr. Rojas was 5, his mother was sentenced to prison for drug crimes. When his mother was in prison Mr. Rojas was placed in Foster Care. Living in Foster care was horrific. As a child in foster care Michael endured repeated physical and sexual abuse.

Mr. Rojas is currently in a relationship with Megan Rojas. Together the couple has 1 child, a 7 year old son. Mr. Rojas has two adult children from a previous relationship.

Unsurprisingly the neglect combined with the physical and sexual abuse led to Mr. Rojas developing mental health issues. Mr. Rojas has been diagnosed with bi-polar disorder and is currently taking medication to address his bi-polar disorder.

These issues led to Mr. Rojas developing substance abuse issues. When Michael was five years old he was given marijuana for the first time. By the time he was eleven, he was using marijuana on a daily basis. When he was

thirteen Mr. Rojas was given alcohol for the first time. As an adult, Mr. Rojas became addicted to methamphetamine.

Mr. Rojas does have prior felony convictions. His criminal history can be directly traced to his substance abuse issues. As a disease that affects both brain and behavior, addiction can often motivate and fuel offense conduct by changing the structure and function of the brain. United States v. Hendrickson, 25 F. Supp. 3d 1166, 1171-72 (N.D. Iowa 2014) (citing Nora D. Volkow, NATIONAL INSTITUTE ON DRUG ABUSE, DRUGS, BRAINS, AND BEHAVIOR, Preface at 1 (2010)). Scientists believe such changes may help explain the "compulsive and destructive behaviors of addiction." *Id.* "Stated plainly, addiction biologically robs drug abusers of their judgment, causing them to act impulsively and ignore the future consequences of their actions." *Id.* at 1173 (citing David M. Eaglemen et al., Why Neuroscience Matters for Rational Drug Policy, 11 MINN. J.L. SCI. & TECH. 7, 26 (2010)).

Mr. Rojas has been continuously in custody since January 31, 2018. During that time Mr. Rojas has worked to address his addiction and mental health issues by participating in treatment programs while in custody. While in custody Mr. Rojas has undertaken a long list of programs. *See* Attachment A.

Mr. Rojas worked on programs to help better himself. Specifically, taking and completing courses that help a person begin to understand the thinking

that led them to be incarcerated. In these programs Mr. Rojas was able to examine his life and the incidents that led to him being arrested and incarcerated. Mr. Rojas was able to develop an understanding of the thought processes that led to these decisions and how to address and change those processes so he can positively change his future.

Mr. Rojas has completed Core Civic's Go Further ReEntry Process Programs. The multipart program provides inmates with a "roadmap" that covers every stage of reentry. The programs includes educational literacy programs. The programs works to include vocational programs that address how to obtain gainful employment. Additionally, there is planning that helps inmates prepare to address living on their own in the community.

Mr. Rojas completed a large variety of programs to help improve the future for his family and himself. He completed parenting classes so that he can better a better father to his 7 year old son. Mr. Rojas completed anger management courses and has completed courses that help people get motivated to make positive changes in their life.

Mr. Rojas was so successful and transformed by the programs he completed that he was asked to teach courses to other inmates. Mr. Rojas has worked as a peer leader of a courses entitled Mindful Living and Mindfulness for Everyday Life. In his role as leader of these courses Mr. Rojas was able to work with other inmates to help them address issues that have led them to be

5

incarcerated. Teaching and working with other inmates has allowed Mr. Rojas to develop a deeper of understanding of his own issues.

While at Core Civic Mr. Rojas has participated in the ADL Assistant Program for the last year. Specifically, because Mr. Rojas was a model inmate he was asked to assist other inmates that had physical or medical disabilities. In that role Mr. Rojas helped, among others, an inmate who was diagnosed with cancer. Mr. Rojas assisted that inmate with his food tray, getting in and out of his wheelchair, cleaning his cell, doing his laundry, and transporting him to medical treatment and other activities. This act of selfless service to another person helped Mr. Rojas continue to grow and examine the issues in his life and develop the skills necessary to avoid repeating these actions in the future.

Evidence of Mr. Rojas' conduct during his incarceration in this case is a testament to his amenability to change his future conduct and provides the most up to date picture of his history and characteristics. *See* Pepper v United States, 562 U.S. 476, 487-488 (2011).

**Reflect the seriousness of the offense; to promote respect for the law, and to provide a just punishment for the offense, to protect the public from further crimes of defendant**

Mr. Rojas has pled guilty to one count of felon in possession of a firearm. A sentence of 48 months is appropriate in this case and would adequately

6

reflect the seriousness of the offense. Mr. Rojas will be significantly punished as a result of his conviction.

A guideline sentence is not necessary to protect the public from further crimes of Mr. Rojas. Mr. Rojas main cause of legal related problems stems from substance abuse issues related to his mental health issues. A sentence of 48 months is sufficient in this case.

### **Deterrence**

The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587

7

(1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame"). The National Academy of Sciences (NAS) concluded that insufficient evidences exists to justify predicating policy choices on the general assumption that harsher punishments yield measurable deterrent effects. *What Caused the Crime Decline*, Brennan Center for Justice, 26 (Feb. 2015). The NAS pointed out that severe terms of incarceration may not affect an offender's immediate decision to engage in criminal behavior. *Id.*

When it comes to general deterrence, certainty of punishment is more important than severity of punishment. Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 30 (2006). Increases in the severity of punishment seldom, if ever, prevent crime. *Id.* "There is little evidence that increases in the length of already long prison sentence yield general deterrent effects that are sufficiently large to justify their social and economic costs. *Deterrence in the Twenty-First Century*, Daniel S. Nagin, 42

8

Crime & Just. 199, 201 (2013). Lengthy prison sentences cannot be justified on a deterrence-based, crime prevention basis. *Id.* at 202.

A sentence of 48 months is appropriate in this case will have just as much marginal deterrent effect as a longer sentence of imprisonment.

### **Unwarranted Sentencing Disparity**

Statistics from the United States Sentencing Commission suggest that a sentence below the guidelines is warranted. According to the United States Sentencing Commission's Federal Sentencing Statistics for FY 2019 (the most recent available), approximately 42% of Defendants convicted of felon in possession of a firearm within the Eighth Circuit receive a sentence below the guideline range. Within the Western District of Missouri approximately 39.8% of Defendant's convicted firearms related offenses receive a sentence below the guidelines.

## CONCLUSION

When determining the appropriate sentence the court is required to ***impose a sentence sufficient but not greater than necessary***. A review of Mr. Rojas's case in light of the sentencing factors enumerated in 18 U.S.C. § 3553 demonstrates that a sentence of 48 months is well within the Court's discretion and warranted in this case. Further, a sentence of 48 months is appropriate in this case provides adequate deterrence to criminal conduct while sufficiently protecting the public from further crimes. For these reasons,

9

Mr. Rojas requests that the court impose a sentence of 48 months.

> Respectfully submitted,
>
> ***/s/ William J. Raymond***
> William J. Raymond
> Assistant Federal Public Defender
> 1000 Walnut, Suite 600
> Kansas City, MO 64106
> (816) 471-8282
>
> ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

In accordance with Rule 49(a), (b) and (d), Fed. R. Crim. P., and Rule 5(b), Fed. R. Civ. P., it is hereby CERTIFIED that one copy of the foregoing motion was electronically delivered to Robert Smith, Assistant U.S. Attorney, Western District of Missouri, 400 E. 9th Street, Kansas City, Missouri, 64106, on this 25th day of September, 2020.

> ***/s/William J. Raymond***
> WILLIAM J. RAYMOND